Joseph E. Sarachek, (NY Bar No. 2163228) *pro hac vice*
Zachary E. Mazur, (NY Bar No. 5706726) *pro hac vice*
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
joe@saracheklawfirm.com, (646) 517-5420
zachary@saracheklawfirm.com (646) 519-4396
*Special Litigation Counsel for Lenard E. Schwartzer, Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.  BK-S-19-18056-ABL **(Lead Case)** |
| WELSCORP, INC. | **Consolidated under BK-S-19-18056-ABL with:** |
| Debtor. | Case No. BK-S-20-11597-ABL<br>Case No. BK-S-20-11211-ABL<br>Case No. BK-S-20-11215-ABL |
| ☐ Affects Einstein Sports Advisory Ltd.<br>☐ Affects QSA LLC<br>☐ Affects Wellington Sports Club, LLC<br>☐ Affects Welscorp, Inc.<br>☒ Affects All Debtors | Chapter 7 |
| LENARD E. SCHWARTZER, in his capacity as CHAPTER 7 TRUSTEE<br><br>Plaintiff,<br><br>vs.<br><br>ALAN GRUSKOFF<br><br>Defendant. | **ADVERSARY PROCEEDING**<br><br>Case No. 21-01008-ABL<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**<br><br>Hearing Date:  November 18, 2021<br>Hearing Time: 9:30 a.m. |

Plaintiff Lenard E. Schwartzer, in his capacity as Chapter 7 Trustee in the above-captioned bankruptcy case, ("Trustee" or "Plaintiff"), by and through his counsel Zachary E. Mazur and Joseph E. Sarachek of the Sarachek Law Firm, hereby files this Motion for Summary Judgment (the "Motion") against Defendant Alan Gruskoff pursuant to Rules 56 of the Federal Rules of Civil Procedure ("FRCP"), incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 7056 of the Local Rules of Practice for the United States Bankruptcy Court for the

District of Nevada (the "Local Rules").

This Motion is supported by the accompanying Memorandum of Points and Authorities, the Statement of Undisputed Facts ("SUF"), which is filed separately and concurrently with the filing of this Motion pursuant to Rule 7056(a) of the Local Rules, and on the accompanying Request for Judicial Notice in Support of Plaintiff's Motion for Summary Judgement, with Exhibits ("RJN").   Trustee herein asks this Court to enter summary judgment against Defendant Gruskoff.

Dated this 1st day of October, 2021.

*/s/ Zachary E. Mazur*
Joseph E. Sarachek, (NY Bar No. 2163228) *pro hac vice*
Zachary E. Mazur, (NY Bar No. 5706726) *pro hac vice*
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
*Special Litigation Counsel for*
*Lenard E. Schwartzer, Trustee*

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The facts that bear on the merits of the Trustee's case in chief against Defendant Gruskoff are undisputed.   The Complaint provides an outline of the Debtor's massive Ponzi Scheme (RJN, Ex. G), and the Defendant did not deny these allegations in his Answer (the "Answer," RJN, Ex. H).   The Debtors Ponzi Scheme is undisputed. SUF ¶ 1.  In the Answer, Gruskoff repeats seven times the fact that he created websites for the Debtors.  *Id.* also SUF ¶¶ 8-9.  He admits that he was paid for his website design work.  RJN, Ex. H, generally, also SUF ¶¶ 11 and 15.  Defendant even admits that he knew that the Debtors were running a Ponzi Scheme. SUF ¶ 13.   It is now obvious that the Debtors paid Defendant Gruskoff with actual intent to defraud existing and future investors in their Ponzi Scheme.  These undisputed facts comprise the basis for the Trustee's case in chief and are sufficient to avoid the multiple transfers made to Defendant during the four years preceding the petition date.

It is impossible for Gruskoff to avail of any of the defenses available to a transferee under Bankruptcy Code § 548(c), especially now that the Court has deemed that he admitted that he knew that the Debtors were running a Ponzi Scheme when he created the websites. SUF ¶ 13.   The various websites that he created for the Debtors are of such a low quality that they cannot possibly comprise reasonably equivalent value for the $216,000 that Gruskoff received from the Debtors.  Also, Debtors' get-rich-quick, scheme is so patently fraudulent and illegal that Gruskoff cannot have taken the inflated payments in "good faith."  As early as October 2017, Defendant was suspicious of whether Debtors were running a fraud.  SUF ¶ 12. (Gruskoff writes to Debtor Thomas: "Its [sic] hard for me to tell people they can expect a payout, when I HAVE NEVER BEEN PAID ON A CONTACT [sic].  Something needs to be

done.")  Despite his reservations, he continued to work for the Debtors (and receive monthly

$9,000 payments totaling $126,000) after his assertion that "something needs to be done."

## II.  BRIEF STATEMENT OF FACTS

Debtors Welscorp, Inc. and its co-debtor affiliates and principals (collectively, the

"Debtors") were operated as a Ponzi scheme.  SUF ¶ 1. As part of this fraud, Debtors' principals[1]

John F. Thomas and Thomas Becker utilized the Debtor entities to raise nearly $30 million from

approximately 600 investors (collectively, "Investors") as participants in ostensible online sports

betting contracts.  SUF ¶¶ 1-3.  Those Investors, many of whom were unsophisticated, often

placed a substantial percentage of their net worth (including savings and retirement accounts) with

the Debtors and now stand to lose their entire investment. The quality of the Investors' entire lives

will likely be substantially and adversely affected by the fraud perpetrated by Thomas, Becker, the

Debtors and their agents.

The Investors were often lured into the scheme though personalized access to a series of

online portals, with addresses such as www.wellingtonsportsclub.com,

www.einsteinsportsadvisory.com, www.quantumsportsadvisory.com,

www.vegasfootballclub.com, and others (the "Websites").  SUF ¶ 6-7.   Those websites would

provide prospective investors with fake illustrations of how their investment would grow over

time. SUF ¶ 7.   Once an investor committed money, his/her individualized login would

ostensibly allow them to track their "winnings" through the Websites.  SUF ¶ 7.

In the years leading up to the filing of the involuntary Chapter 7 Petition (the

"Petition") on December 20, 2019 (the "Petition Date"), Alan Gruskoff ("Gruskoff" or

"Defendant") was paid generously to develop and maintain the Websites, which were

---

[1] The Debtors' principals are also Debtors in these proceedings.

4

essential tools for perpetrating and maintaining the fraudulent scheme.  SUF ¶¶ 8-11.   The

purpose of this lawsuit is to avoid and recover monies previously paid to Defendant by

reason of these activities, on the grounds that such payments were actually fraudulent,

and/or constructively fraudulent, and therefore avoidable.

Gruskoff was a key insider in the fraudulent scheme, whose services were essential

in both attracting new investors, and maintaining those investors under the illusion that their

earnings were growing exponentially.  SUF ¶¶ 6-11.   Gruskoff developed and maintained the

websites together with Debtors' principals Thomas and Becker, under their direction, in a

concerted effort to perpetrate the scheme.   SUF ¶¶ 8-11.   In compensation, he earned rich fees

at above-market rates.   The Plaintiff proved (and Defendant admitted) that that within the two

years preceding the Initial Petition Date, Defendant received checks from the Debtors (the

"Two Year Transfers"), totaling $117,000.  SUF ¶¶ 11 and 15.   The Plaintiff proved that

within the four years preceding the Initial Petition Date, Defendant received transfers totaling

not less than $216,000 (the "Four Year Transfers" and, collectively with the Two-Year

Transfers, the "Transfers"), including compensation for assisting in the perpetration of the

fraudulent scheme.  (The Four-Year Transfers are inclusive of the Two-Year Transfers, but the

Trustee does not seek to recover the same sum more than once.)   SUF ¶¶ 11 and 15.   The

checks that the Defendant admitted to having received from Debtors (SUF ¶ 15) may be

summarized as follows:

| Debtor | Transferee | Check Date | Check No. | Amount |
|---|---|---|---|---|
| **Four Year Transfers:** | | | | |
| ESA Ltd | Alan Gruskoff | 12/7/2016 | 4017 | $ 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 1/17/2017 | 7083 | $ 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 3/2/2017 | 7100 | $ 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 3/28/2017 | 7106 | $ 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 5/24/2017 | 7124 | $ 9,000.00 |

| | | | | | |
|---|---|---|---|---|---|
| Sports Psychometrics, LLC | Alan Gruskoff | 7/7/2017 | 7143 | $ | 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 8/4/2017 | 7155 | $ | 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 8/31/2017 | 7162 | $ | 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 9/1/2017 | 7163 | $ | 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 9/29/2017 | 7186 | $ | 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 10/26/2017 | 7211 | $ | 9,000.00 |
| **and Two Year Transfers:** | | | | | |
| Sports Psychometrics, LLC | Alan Gruskoff | 12/22/2017 | 7252 | $ | 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 11/24/2017 | 7229 | $ | 9,000.00 |
| Sports Psychometrics, LLC | Alan Gruskoff | 1/30/2018 | 7284 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 3/6/2018 | 8678 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 4/5/2018 | 8788 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 5/7/2018 | 8876 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 6/5/2018 | 9024 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 7/5/2018 | 9110 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 8/5/2018 | 9257 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 9/5/2018 | 9417 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 10/5/2018 | 9501 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 11/5/2018 | 9713 | $ | 9,000.00 |
| QSA LLC | Alan Gruskoff | 12/7/2018 | 9755 | $ | 9,000.00 |
| Two Year Transfers SUBTOTAL: | | | | $ | 117,000.00 |
| **Four Year Transfers TOTAL:** | | | | **$** | **216,000.00** |

In total, the Trustee is seeking to avoid and recover on $216,000 in proven transfers that were made to Gruskoff with fraudulent intent for the purposes of furthering the Debtors' fraud.

### III.  ARGUMENT

#### A.  SUMMARY JUDGEMENT IN FAVOR OF THE TRUSTEE ON HIS FRAUDULENT CONVEYANCE CLAIMS IS APPROPRIATE

Summary judgement is appropriate when no genuine issue of material fact exists. Fed. R. Civ. P 56(a). The moving party must satisfy the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether the moving party satisfies the initial burden, the court must view all facts in the light that most favors the non-moving party. *Id.*

6

### 1.    The Transfers Were Made with Actual Fraudulent Intent to Hinder, Delay or Defraud Creditors

Section 548 of the Bankruptcy Code allows the trustee to claw back the Two-Year Transfers made by the Debtors to Gruskoff under an actual fraud theory, specifically:

> "the trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A)."

Moreover, section 544 of the Bankruptcy Code allows the trustee to claw back the Four Year Transfers on behalf of the creditors as allowed by state law: "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1).

For actual fraud, Nevada codified the relevant state law under the section 112.180 of the Nevada Revised Statutes: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor." Nev. Rev. Stat. Ann. § 112.180(1)(a). This provision allows the trustee to reach back to transactions "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Nev. Rev. Stat. Ann. § 112.230(1)(a).

7

### a. Evidence of a Ponzi Scheme is Proof of Fraudulent Intent

The Ninth Circuit defines a Ponzi scheme as "a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *Santa Barbara Capital Mgmt. v. Neilson (In re Slatkin)*, 525 F.3d 805, 809 n.1 (9th Cir. 2008) (quoting Alexander v. Compton *(In re Bonham)*, 229 F.3d 750, 759 n.1 (9th Cir. 2000)). Courts in the Ninth Circuit "have found the mere existence of a Ponzi scheme sufficient to establish the actual intent to hinder, delay, or defraud creditors under 11 U.S.C. § 548(a)." *In re Slatkin*, 525 F.3d at 814.

The existence of a Ponzi is commonly found when there is evidence that "(1) deposits were made by investors; (2) the Debtor conducted little or no legitimate business operations as represented to investors; (3) the purported business operations of the Debtor produced little or no profits or earnings; and (4) the source of payments to investors was from cash infused by new investors." *Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 630 (Bankr. S.D. Ohio 2006).

Here, at least 600 investors deposited a total of roughly $30 million with the Debtors. SUF ¶¶ 1, 3. The Debtors only used a fraction of the capital raised to actually bet on sporting events, as represented to investors. SUF ¶ 4. The purported enterprise did not generate meaningful profits.  SUF ¶ 7. And finally, distributions to investors were substantially funded by money raised from subsequent investors. SUF ¶ 7.  Defendant has admitted that the Debtors were running a Ponzi Scheme.  SUF ¶ 7  This Court also deemed Defendant to having admitted to knowing that the Debtors were running a Ponzi Scheme.  SUF ¶ 13.

Thus, the Debtor had actual fraudulent intent "to hinder, delay or defraud any creditor," because it was set up as Ponzi Scheme from the start. SUF ¶¶ 8-11. The Debtors hired Gruskoff to build the Websites to defraud people and to perpetuate their ongoing fraudulent

scheme. SUF ¶¶ 6-11. The Trustee should therefore benefit from a presumption of the transferor's fraudulent intent. *See In re Slatkin*, 525 F.3d at 814. The SEC, through an exhaustive reconstruction of the Debtors' books and records, performed by an experienced forensic accountant, has already determined that the Debtors were running a Ponzi scheme. SUF ¶¶ 14. The Indictment against Debtors' principals also describes the Debtors as having run a Ponzi scheme. SUF ¶¶ 13.

With actual fraudulent intent, the elements for an avoidance action are the same for federal law and Nevada state law (both statutes use the "hinder, delay or defraud" language). To prevail on his claims of fraudulent transfers made with the actual intent to hinder, delay or defraud creditors, the Trustee must show that:

(1) debtors transferred an interest in property to the Defendant; and

(2) debtors transferred the property during the applicable lookback period—two years prior to the petition under 11 U.S.C. § 548, and four years after the transfer for Nevada's version of the Uniform Fraudulent Transfer Act ("UFTA"); and

(3) debtors made the transfer with actual intent to hinder, delay, or defraud a present or future creditor. 11 U.S.C. § 548(a)(1)(A); NEV.REV.STAT. § 112.180.1(a). In re Nat'l Audit Def. Network, 367 B.R. 207, 218–19 (Bankr. D. Nev. 2007).

These elements are easily proven in the instant case, for the reasons given above. The cancelled checks (SUF ¶ 15) show that the Debtors transferred stolen money to Gruskoff during the look back periods, with actual intent to defraud. The Transfers are therefore avoidable.

### b. Even Absent a Ponzi Scheme Presumption, the Trustee Can Establish Fraudulent Intent

Nev. Rev. Stat. Ann. § 112.190 identifies two more situations where a transfer is deemed fraudulent under a constructive fraud theory. First, transactions made to a creditor

"whose claim arose before the transfer was made or the obligation was incurred if the debtor

made the transfer or incurred the obligation without receiving a reasonably equivalent value in

exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor

became insolvent as a result of the transfer or obligation." Nev. Rev. Stat. Ann. § 112.190(1).

The timing requirement for such transaction is "within 4 years after the transfer was made or

the obligation was incurred." Nev. Rev. Stat. Ann. § 112.230(1)(b). Second, a transfer made by

a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the

transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time,

and the insider had reasonable cause to believe that the debtor was insolvent. Nev. Rev. Stat.

Ann. § 112.190(2). The timing requirement for such transaction is "within 1 year after the

transfer was made or the obligation was incurred." Nev. Rev. Stat. Ann. § 112.230(c).

The Transfers are also avoidable under some of the statutory constructive fraud theories

mentioned above.   The Transfers were made to Gruskoff in exchange for low quality websites

that were, on their face, illegal, so the Debtor did not receive "reasonably equivalent value."

The Transfers were made at a time that the Debtors were insolvent, because Ponzi Schemes are

insolvent from their outset.  Gruskoff was an "insider," inasmuch as he was an employee of the

Debtor who served one of the vital functions of the Scheme – the recruitment of new Investors.

He has admitted to knowing that he was involved in perpetrating a Ponzi Scheme. SUF ¶ 13.

He very much would have had "reasonable cause" to believe that the Debtors were insolvent,

given his central role.

### 2.    Affirmative Defenses Under §§ 548(c) and 544 Are Unavailing

Due to the presumption of the transferor's fraudulent intent in Ponzi Schemes, Gruskoff

is unable to plausibly justify his receipt of investor funds.   He received the Transfers from a

manifestly fraudulent enterprise in exchange for creating illegal online betting websites that

were intended to feed that scheme with more victim funds.  SUF ¶¶ 5-10.  He knew he was developing the websites, and receiving the Transfers, for the purposes of perpetuating a Ponzi Scheme.  SUF ¶ 13. Almost by definition, the Transfers were made by the Debtors "with actual intent to hinder, delay, or defraud" new victims.

Under federal law, a transfer "with actual intent to hinder, delay, or defraud" is avoidable even if the recipient accepted the property in good faith. 11 U.S.C. § 548(c). The presence of good faith under federal law only helps the recipient in the case of an actual intent fraudulent transfer insofar as it enables the recipient post-avoidance to have a lien on the transferred property to the extent of value provided. *In re Nat'l Audit Def. Network*, 367 B.R. 207, 225 (Bankr. D. Nev. 2007).   Under Nevada law, for there to be any defense available against the avoidance of an actual intent fraudulent transfer, the presence of good faith is also a necessary condition to any form of defense. NEV. REV. STAT. ANN. § 112.220(1), *See In re Nat'l Audit Def. Network*, 367 B.R. 207, 223 (Bankr. D. Nev. 2007).

A defense under Bankruptcy Code 548(c) also requires that a transferee gives some "value" for the transfer.   A complete defense under Nevada law also requires that the recipient to show "reasonably equivalent value" as part of the exchange. 367 B.R. 207, 223. Furthermore, under both state and federal law, "once the plaintiff has met his or her burden of showing the transfer was made with the requisite intent, it is the recipient's burden to prove the existence of good faith and, as applicable, value and reasonably equivalent value." *Id* at 224. Even if he could somehow show good faith in knowingly perpetrating a Ponzi Scheme, Defendants' illegal websites cannot be considered to have economic "value."  Therefore, all of Defendants' available defenses are foreclosed by the evidence and by his own admissions.

### a.  Good Faith is Absent

Absent good faith, neither federal nor state law provide for a complete defense against the

avoidance of an actual intent fraudulent transfer. 11 U.S.C. § 548(c), NEV. REV. STAT. ANN. § 112.220(1). While "good faith" is not explicitly defined under state or federal law, the Ninth Circuit has interpreted Nevada law as recognizing good faith only where the transferee "show[s] objectively that he or she did not know or had no reason to know of the transferor's fraudulent purpose." *Plaza Bank v. Green*, 599 F. App'x 801, 802 (9th Cir. 2015) (quoting good faith *Herup v. First Bos. Fin., LLC*, 123 Nev. 228, 237, (2007)). The Ninth Circuit has also asserted that with regard to issues of "good faith" under federal law, courts look to what the transferee objectively knew or ought to have known, as opposed to what the transferee actually knew. *In re Agric. Rsch. & Tech. Grp., Inc.*, 916 F.2d 528, 535–36 (9th Cir. 1990).

Here, having admitted to knowing that the work he was doing was in aid of Debtors' Ponzi Scheme (SUF ¶ 13), Defendant cannot plausibly argue "good faith" as a defense.    Here, there is direct evidence that Gruskoff had notice of fraudulent activities conducted by the Debtors related to his transacting with them. SUF ¶ 12.  In addition to his admission, the clear lack of "good faith" is confirmed by emails showing Gruskoff  questioning how investors could actually be paid the amounts promised to them through the data Gruskoff was paid to render through the website. SUF ¶¶ 12. Furthermore, given Gruskoff's experience as a website developer prior to his involvement with the debtor, Gruskoff ought to have known that fraudulent activities were being carried out by the debtors, due to the suspiciousness of the debtor's offering to pay exorbitantly high rates for website work that was so high above the going market rate for that same kind of work. SUF ¶¶ 8-11.

### b.  Reasonably Equivalent Value is Absent

Following a finding that good faith is lacking, the question of reasonably equivalent value becomes moot from both a state law and federal law standpoint. *See In re Nat'l Audit*

*Def. Network at 223*. Moreover, even in the hypothetical scenario where good faith was present, reasonably equivalent value is absent. SUF ¶¶ 12.

"Even though the Bankruptcy Code does not define what "reasonably equivalent value" means, it "is not an esoteric concept: a party receives reasonably equivalent value ... if it gets roughly the value it gave." *In re Pringle*, 495 B.R. 447, 463 (B.A.P. 9th Cir. 2013) (quoting *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3rd Cir.2007). Here, what Gruskoff received in value was payments from the Debtors and what Gruskoff gave in value, if any, was his website services that were used to further perpetrate a fraudulent scheme. Given the huge disparity between the payments received by Gruskoff and any value of the services he rendered to the Debtors, it is clear that reasonably equivalent value is not present. SUF ¶¶ 12. Defendant simply declined to answer interrogatories and requests for production of documents focused on the economic value of the websites. See RJN, Ex. I ("Order Compelling Discovery and Granting Related Relief.")  Also, because the websites were illegal, purposely designed to defraud investors, they cannot be considered by this Court to possess economic "value."

## IV.  <u>Conclusion</u>

For all of the aforementioned reasons, the Trustee respectfully asks the court to avoid the Transfers and enter a judgement against Defendant for the full amount of the Transfers. The ample evidence proving a Ponzi scheme entails a finding that the Transfers were performed "with actual intent to hinder, delay, or defraud." Moreover, given Gruskoff's lack of good faith with respect to the Transfers, he has no viable defense under federal or state law. Lastly, even in the unlikely scenario that Gruskoff could meet the burden of showing good faith, there still remains an absence of reasonably equivalent value provided as part of the exchange.

Dated this 1st day of October 2021.

/s/ Zachary E. Mazur
Joseph E. Sarachek, (NY Bar No. 2163228) *pro hac vice*
Zachary E. Mazur, (NY Bar No. 5706726) *pro hac vice*
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
*Special Litigation Counsel for*
*Lenard E. Schwartzer, Trustee*